# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CT-00644-SCT

*ILLINOIS CENTRAL RAILROAD COMPANY*

*v.*

*BENNIE OAKES, DECEASED, BY AND
THROUGH CLARA HAGAN, HIS
REPRESENTATIVE*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 03/01/2013 |
| TRIAL JUDGE: | HON. ISADORE W. PATRICK, JR. |
| TRIAL COURT ATTORNEYS: | TOMMIE G. WILLIAMS |
| | MARC A. BIGGERS |
| | F. EWIN HENSON, III |
| | ROBERT S. UPSHAW |
| | CLINTON M. GUENTHER |
| | RICHARD C. WILLIAMS, JR. |
| | RICHARD L. KIMMEL |
| | HUGH GILLON |
| | PATRICK M. TATUM |
| | JAMES LAWRENCE WILSON, IV |
| | STEVEN CAVITT COOKSTON |
| | PETER L. CORSON |
| | CHARLES CAMERON AUERSWALD |
| | TOMMIE GREGORY WILLIAMS, JR. |
| | WILLIAM LOCK MORTON, III |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | GLENN F. BECKHAM |
| | HARRIS FREDERICK POWERS, III |
| ATTORNEYS FOR APPELLEE: | HENRY DEAN ANDREWS, JR. |
| | TIMOTHY W. PORTER |
| | PATRICK MALOUF |
| | JOHN TIMOTHY GIVENS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 02/15/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1. The issue presented in the instant case is whether the defendant is entitled to a setoff for money already paid to the plaintiff for the same injuries alleged to have been caused by the defendant. It is not, as treated by the dissent, a case about apportionment of fault amongst different tortfeasors. As described by Illinois Central, who as appellant framed the issues for appeal, "This case *is* about whether, once those damages are assessed by a jury, a railroad company under the [Federal Employers' Liability Act] is entitled to a credit or reduction of that verdict for sums that have already been paid by others to the Plaintiff for the same injuries and damages." In Illinois Central's answer, it raised an affirmative defense that "it is entitled to apportionment or set off liability and/or damages for any negligence of or damages caused by third parties, including but not limited to other employers and manufacturers, distributors, and sellers of products to which plaintiff claims the decedent was exposed as alleged in the complaint." However, Illinois Central later clarified its position that it was not attempting to have negligence apportioned, and the circuit court echoed the clarification by stating that Illinois Central had not "tried to use a third, an empty chair for any other defendants."

¶2. The Court of Appeals issued an opinion affirming the Warren County Circuit Court's denial of Illinois Central Railroad's request for a setoff of a jury verdict awarded to Bennie Oakes through his representative Clara Hagan. We hold that the Court of Appeals

misconstrued the primary case it relied upon and ignored other federal precedent; therefore, we reverse the Court of Appeals' judgment and the circuit court's denial of Illinois Central's motion for a setoff. We remand for proceedings consistent with our opinion.

## FACTS AND PROCEDURAL HISTORY

¶3. On February 13, 2009, Clara Hagan filed a complaint, as the representative of Bennie Oakes, against Illinois Central in the Warren County Circuit Court. The complaint, brought under the provisions of the Federal Employers Liability Act,[1] sought to recover damages for "personal injuries and/or death sustained by Bennie Oak[e]s, deceased, while [Oakes] was employed by [Illinois Central] and while engaging in interstate commerce."

¶4. Oakes had been an employee of Illinois Central from 1952 through 1994 and "was exposed to asbestos on a daily basis." The complaint contained allegations that:

> As a result of his exposure to asbestos containing products and materials, [Oakes] has developed asbestosis, lung cancer, shortness of breath, reduced lung function, cough, chest congestion, and is at increased risk to develop one or more of the following diseases: mesothelioma, asbestos related pleural disease, mixed dust pneumoconiosis, sleep interruption, aggravation of pre-existing and co-existing disease, throat cancer, laryngeal cancer, colon, stomach, and other asbestos related cancer.

According to the complaint, due to Illinois Central's negligence in exposing Oakes to asbestos daily, Oakes incurred injury and damages.

¶5. The first trial occurred in 2011 but resulted in a hung jury. The jury in the second trial

---

[1] "The Federal Employers' Liability Act . . . 45 U.S.C. §§ 51-60, makes common railroads liable in damages to employees who suffer work-related injuries caused 'in whole or in part' by the railroad's negligence." *Norfolk & Western Ry. Co. v. Ayers*, 538 U. S. 135, 140 (2003).

3

found in favor of Hagan and awarded $250,000 in damages; however, the jury also apportioned fault, with Illinois Central being twenty percent at fault and Oakes being eighty percent at fault. Therefore, the circuit court adjusted the damages accordingly, and the total award was $50,000. Illinois Central filed a Motion for Entry of Judgment and Setoff to have the damages reduced further based on its discovery that Hagan had received more than $65,000 in payments from asbestos trusts for Oakes's injuries and death. The circuit court denied Illinois Central's motion and entered the judgment of $50,000 plus eight percent interest.

¶6.     Illinois Central appealed, and the case was assigned to the Court of Appeals. Writing for the Court of Appeals, Judge Greenlee framed the issue on appeal as "whether setoff against a jury verdict is required in [Federal Employers' Liability Act] cases where the claimant has already settled with separate tortfeasors." ***Illinois Cent. R.R. Co. v. Oakes***, 2016 WL 7647571, *1 (¶ 4) (Miss. Ct. App. Dec. 13, 2016). The Court of Appeals held:

> Because an injured railroad employee can recover all his damages from his railroad employer if the employer's negligence caused any part of the employee's injury, and because the collateral source rule does not allow for a defendant to avoid payment of damages based on compensation to the plaintiff from a third party that was not a party to the action, we find that an allowance of setoff for recoveries from nonparty tortfeasors is inconsistent with the [Federal Employers' Liability Act]'s intent, the statutory language, and Mississippi and U.S. Supreme Court precedent.

*Id.* at *3 (¶11). Judge Wilson authored a dissent, joined by Presiding Judge Griffis, and explained that: "The sole issue in this appeal is whether the judgment against Illinois Central should be offset . . . based on settlement payments that Hagan or Oakes previously received

4

from the bankruptcy trusts of the manufacturers of the asbestos to which Oakes was exposed." *Id.* at \*3 (¶ 14). He further explained that "[t]he majority rule on this issue of federal law is that Illinois Central is entitled to such an offset . . . ." Finally, the dissent concluded:

> Nothing in the [Federal Employers' Liability Act] entitles the plaintiff to more than one recovery for his damages. This case involves an injury caused by exposure to asbestos; the plaintiff has already been compensated for this same injury by the manufacturers of the asbestos; and there is no reason that her recovery against Illinois Central should not be reduced to account for those payments.

*Id.* at \*5 (¶ 22). Based on the Court of Appeals' decision, Illinois Central filed a petition for writ of certiorari, which the Court granted.

¶7.    In its petition, Illinois Central argued that the Court of Appeals decision is in "'irreconcilable conflict' with previous opinions . . . and disregards the controlling federal law on the issue." Additionally, Illinois Central submitted that the primary case of *Norfolk & Western Railway Company v. Ayers*, 538 U.S. 135 (2003), relied upon by the Court of Appeals' decision, was misconstrued and misapplied to the present case. Illinois Central also argued that the Court of Appeals' decision erred in holding that the collateral source rule applied to asbestos trusts set up by the now-bankrupt asbestos manufacturers as a condition of their bankruptcy proceedings. Finally, Illinois Central contended that the Court of Appeals' decision effectively "obliterates" the one-recovery rule by allowing Hagan to collect from the asbestos trust for the asbestos-related injury and also from Illinois Central for the same asbestos-related injury.

5

## ANALYSIS

¶8. As the Court of Appeals noted, the issue in the present case is whether Illinois Central is entitled to a setoff of the jury verdict based on Oakes's or Hagan's receipt of settlement funds from an asbestos bankruptcy trust. We hold that it is, and the Court of Appeals and the circuit court erred in concluding otherwise. Additionally, the dissent makes the same mistake as the Court of Appeals by analyzing the case as an apportionment case instead of reviewing it as a question of whether double recovery is prohibited.

¶9. The Court of Appeals' majority opinion based its holding primarily on the United States Supreme Court case of *Ayers*. The majority states that the Supreme Court in *Ayers* rejected "the suggestion that the [Federal Employers' Liability Act] would permit damages to be apportioned among joint tortfeasors according to the degree of fault attributable to each." *Oakes*, 2016 WL 7647571, *2 (¶8) (citing *Ayers*, 538 U.S. at 161-65). Further, "[t]he *Ayers* Court found significant that Congress, while expressly directing in the [Federal Employers' Liability Act] the apportionment of responsibility between employers and employee based on comparative fault, did not provide for such apportionment among potentially liable tortfeasors." *Id.* We hold that the Court of Appeals' majority opinion misunderstood and misapplied *Ayers*, while dismissing a bounty of other federal caselaw directly on the issue.

¶10. In *Ayers*, six former employees of Norfolk & Western Railway Company sued the company after they were diagnosis with asbestosis. *Ayers*, 538 U.S. at 140. The case presented two issues involving the Federal Employers' Liability Act, with the second issue

6

being pertinent to the present case.

> The second issue concerns the extent of the railroad's liability when third parties not before the court – for example, prior or subsequent employers or asbestos manufacturers or suppliers – may have contributed to the worker's injury. Is the railroad answerable in full to the employee, so that pursuit of contribution or indemnity from other potentially liable enterprises is the railroad's sole damages-award-sharing recourse? Or is the railroad initially entitled to an apportionment among injury causing tortfeasors, *i.e.,* a division of damages limiting the railroad's liability to the injured employee to a proportionate share?

*Id.* at 140-41. Ultimately, the Supreme Court opinion held that the injured employee "may recover his or her full damages from the railroad, regardless of whether the injury was also caused 'in part' by the actions of a third party." *Id.* at 165.

¶11. We do not read *Ayers* to analyze, much less prohibit, setoffs of jury verdicts. First, as the Court of Appeals' dissent pointed out, the Supreme Court noted that a setoff had occurred in *Ayers*, and there was no negative reaction or treatment of the setoff in the opinion. According to *Ayers*: "After reduction for three claimants' comparative negligence from smoking and *for settlements with non-[Federal Employers' Liability Act] entities*, the final judgments amounted to approximately $4.9 million." *Ayers*, 538 U.S. at 143 (emphasis added). The Court of Appeals' majority does not mention the above-quoted language and does not attempt to explain or distinguish why the Supreme Court took no issue with a setoff there.

¶12. More importantly, our review of *Ayers* indicates that setoffs were not the issue. The issue in *Ayers* was whether fault could be apportioned among joint tortfeasors, and *Ayers* stands for the premise that a plaintiff may recover its full amount of damages from one

7

defendant and places the burden on the defendant to seek contribution from other nonparty tortfeasors later. *Ayers*, 538 U.S. at 141. For example, in the present case, had Illinois Central asked that the jury apportion *fault* to Illinois Central, Oakes, *and* the nonparty asbestos trusts, standing in the place of the now-bankrupt asbestos manufacturers, such request would have run afoul of *Ayers*. However, that is not what happened, and the jury apportioned fault between Illinois Central and Oakes, as permitted by the Federal Employers' Liability Act and *Ayers*. As the Court of Appeals' dissent explained:

> It is one thing to hold, as the *Ayers* Court did, that an employee's recovery should not be reduced based on a jury's apportionment of fault to a nonparty. It is quite another thing to suggest that an employee should be able to recover the same damages over and over again from different parties, without any offset for compensation he has already received.

*Oakes*, 2016 WL 7647571, *4 (¶ 19). Simply, *Ayers* does not apply to the facts and issue of the present case. The trial court in the above-styled case has never apportioned fault to the asbestos trusts and, had it done so, it would have erred pursuant to *Ayers*. The settling asbestos trusts never have been held to be liable for the plaintiffs' injuries.

¶13. Since *Ayers* is not on point, we must look at other federal caselaw for guidance regarding whether Illinois Central is entitled to a setoff of the jury verdict. The leading federal case is ***Schadel v. Iowa Interstate Railroad, Ltd.***, 381 F.3d 671, 676 (7th Cir. 2004). In ***Schadel***, Douglas Schadel was injured on the job when a car driven by Brenda Kowalewicz careened through the warning gates and struck him. *Id.* at 673. Schadel sued the railroad company under the Federal Employers' Liability Act and also sued Kowalewicz under state law. *Id.* Schadel settled with Kowalewicz prior to trial, and she was dismissed

8

from the case. *Id.* Kowalewicz's dismissal also extinguished the railroad company's cross-claim against her for contribution and indemnity. *Id.* at 674. At the trial between Schadel and the railroad company, the railroad company was not permitted to introduce Kowalewicz's settlement, and the jury was permitted to allocate fault only between Schadel and the railroad company. *Id.* However, once the jury returned a verdict, the trial court reduced the verdict based on Schadel's negligence and reduced the verdict further based on the Kowalewicz settlement. *Id.* The railroad company appealed, arguing that the trial court should have used a proportionate-share approach, which would have allowed the jury to allocate "responsibility among all three parties and impose[] damages on [the railroad company] only to the extent of its share of the liability." *Id.* After analyzing four approaches to address the allocation of damages in actions involving multiple tortfeasors, the Seventh Circuit concluded that the *pro tanto* approach, or the dollar-for-dollar approach, which the trial court applied, was the correct result consistent with the Federal Employers' Liability Act. *Id.* at 678. The Seventh Circuit's approach in ***Schadel*** was adopted in ***Mancini v. CSX Transporation, Inc.***, No. 08-CV-933, 2010 WL 2985964, at *6 (N.D. N.Y. July 27, 2010); ***Benson v. CSX Transp. Inc.***, 274 F. App'x 273, 276 (4th Cir. 2008); ***Krueger v. Soo Line Railroad***, No. 02-C-0611, 2005 WL 2234610, at *1 (E.D. Wis. Sept. 12, 2005); and ***Hess v. Norfolk Southern Railway Company***, 835 N.E. 2d 679, 689 (¶ 48) (Ohio 2005), and we join the other jurisdictions in holding that the ***Schadel*** approach of a *pro tanto* credit in cases like the present is appropriate.

¶14. Even though ***Ayers*** does not apply to the issue presented in the case *sub judice*

9

because the issue there was whether, under the Federal Employers' Liability Act, fault could be attributed to nonrailroad joint tortfeasors and the issue today is whether, after a verdict in which fault is not attributed to any other tortfeasors the defendant is entitled to a setoff equal to money already paid to the plaintiff for the same injuries, the principal purpose of the Federal Employers' Liability Act announced therein reinforces our holding. As argued by Oakes, "[The Federal Employers' Liability Act]'s express terms, reinforced by consistent judicial applications of the Act, allow a worker to recover his entire damages from a railroad whose negligence jointly caused an injury . . . , thus placing on the railroad the burden of seeking contribution from other tortfeasors." *Ayers*, 538 U.S. at 141. After adjustment for fault apportioned to Oakes, the jury's verdict awarded him $50,000 in damages. The asbestos trusts have paid him more than $50,000. Accordingly, he has recovered his entire damages from the asbestos trusts, and with the setoff, the Federal Employers' Liability Act's purpose has been fulfilled. Nowhere in *Ayers* or any other authorities cited by Oakes is there any indication that the Federal Employers' Liability Act contemplates that a plaintiff would receive more than his entire damages, as would be the case absent the setoff.

¶15.  Indeed, the *Ayers* Court's description of the Federal Employers' Liability Act and its effect on and partial abridgement of the common law of damages buttresses our holding.

> "To further [the Federal Employers' Liability Act's] humanitarian purposes, Congress did away with several common-law tort defenses that had effectively barred recovery by injured workers." *[Consolidated Rail Corporation v.] Gottshall*, 512 U.S. [532, 542], 114 S. Ct. 2396. As cataloged in *Gottshall*, the [Federal Employers' Liability Act] "abolished the fellow servant rule"; "rejected the doctrine of contributory negligence in favor of . . . comparative negligence"; "prohibited employers from exempting themselves from the

10

[Federal Employers' Liability Act] through contract"; and, in a 1939 amendment, "abolished the assumption of risk defense." *Id.* at 542-543, 114 S. Ct. 2396; *see* 45 U.S.C. §§ 51-55. "Only to the extent of these explicit statutory alterations," however, "is the [Federal Employers' Liability Act] 'an avowed departure from the rules of the common law.'" *Gottshall*, 512 U.S. at 544, 114 S. Ct. 2396 (quoting *Sinkler v. Missouri Pacific R. Co.*, 356 U.S. 326, 329, 78 S. Ct. 758, 2 L. Ed. 2d 799 (1958)).

*Ayers*, 538 U.S. at 145. The *Ayers* Court's holding that fault may not be apportioned between the railroad and nonrailroad defendants rests upon the Federal Employers' Liability Act's negating of the common law defense of apportionment. *Id.* at 161. However, nothing in the statute changes the common law on damages to the effect that a defendant, such as Illinois Central in the case *sub judice*, would be prohibited from seeking a setoff from another entity who earlier paid the plaintiff for the same injuries.

¶16. Lastly, because we hold that Illinois Central is entitled to relief in the form of a *pro tanto* setoff consistent with *Schadel*, we do not address the remaining issues involving the collateral-source rule.

**CONCLUSION**

¶17. Although Illinois Central states in its briefs that the settlements were to compensate Oakes and Hagan for the same injuries as alleged in the current Federal Employers' Liability Act lawsuit, the record is less than clear. Accordingly, we reverse the Court of Appeals' and the circuit court's judgments denying Illinois Central a setoff, and we remand to the circuit court for further proceedings consistent with the instant opinion, including, if necessary, a hearing to determine whether the settlement indeed compensated the plaintiffs for the same injuries and the same type of damages as alleged in the lawsuit.

11

¶18. **REVERSED AND REMANDED.**

**WALLER, C.J., MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J. RANDOLPH, P.J., NOT PARTICIPATING.**

**KING, JUSTICE, DISSENTING:**

¶19. Because I believe that the Federal Employers' Liability Act (FELA) and Supreme Court precedent mandate that we not apply a *pro tanto* setoff in this case, I respectfully dissent.

¶20. The majority concludes that Illinois Central is entitled to a *pro tanto* setoff for asbestos trust[2] payments Oakes received from parties which are not and never were parties to the litigation at hand.[3] *Pro tanto* credits may be allowed for joint tortfeasors who are parties to the action. "Joint tointfeasor claims arise where the *separate* wrongful conduct of two or more individuals *combine* to cause an injury, and each because of his conduct bears some responsibility for the injury." *J & J Timber Co. v. Broome*, 932 So. 2d 1, 8 (Miss.

---

[2]The asbestos trust at issue was put into place during a Chapter 11 bankruptcy to "direct the processing, liquidation and payment" of asbestos personal injury claims. *In re T H Agric. & Nutrition, L.L.C.*, No. 08-14692, 2009 WL 7193573 (S.D. N.Y. May 28, 2009).

[3]The narrow and specific issue at hand is whether, under federal law, the *defendant* is entitled to a setoff for payments received by Oakes from nonparties to the lawsuit, something the defendant is under a burden to show. The majority unilaterally changes the issue as to whether the *plaintiff* is entitled to a double recovery, and argues that the dissent reframes the issue as apportionment of fault among tortfeasors. Neither double recovery nor apportionment of fault among joint tortfeasors is at issue here. At issue is whether Illinois Central may claim a setoff for trust payments made by a nonparty to the litigation at hand, and, in this case, federal law does not allow Illinois Central to claim any setoff.

12

2006) (internal quotations omitted) (emphases in original).[4]

¶21.    In *Ayers*, an asbestos case, the railroad argued that it should be allowed to apportion liability among other nonrailroad defendants.  The United States Supreme Court noted that the FELA only allows the jury to apportion damages between the railroad and the employee, it "does not authorize apportionment of damages between railroad and nonrailroad causes." *Norfolk & Western Ry. Co. v. Ayers*, 538 U.S. 135, 159-60, 123 S. Ct. 1210, 155 L. Ed. 2d 261 (2003).  The Court concluded that "reading the FELA to require apportionment would handicap plaintiffs and could vastly complicate adjudications, all the more so if . . . manufacturers and suppliers, as well as other employers, should come within the apportionment pool." *Id.* at 165.  "Once an employer has been adjudged negligent with respect to a given injury, it accords with the FELA's overarching purpose to require the *employer* to bear the burden of identifying other responsible parties and demonstrating that some of the costs of the injury should be spread to them[,]" referring specifically to actions for contribution.  *Id.* at 165, and n.23 (emphasis added).  The United States Supreme Court ultimately held that "[u]nder the FELA, an employee who suffers an 'injury' caused 'in whole or in part' by a railroad's negligence may recover his or her full damages from the railroad, regardless of whether the injury was also caused 'in part' by the actions of a third

---

[4]In Mississippi, among joint tortfeasors, it is generally recognized that a negligent defendant "should not be allowed to escape liability for his negligence by the fortuity that a co-defendant has settled prior to trial." *Broome*, 932 So. 2d at 8-9.  However, in this case, we must apply federal law, and the FELA has a similar purpose: to fully compensate the injured employee. *Norfolk & Western Ry. Co. v. Ayers*, 538 U.S. 135, 144-45, 123 S. Ct. 1210, 155 L. Ed. 2d 261 (2003).

party." *Id.* at 165-66. While the United States Supreme Court was addressing apportionment among parties,[5] not setoffs for a settlement, it specifically mentioned that plaintiffs would be handicapped if apportionment was allowed among asbestos manufacturers.

¶22.    The federal cases cited by the majority are inapposite because they address setoffs due to the settlement of a *party* to the suit.[6]  Federal joinder law allows that persons may be joined as defendants if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).  When a plaintiff joins defendants in a lawsuit and the complaint alleges joint liability for the injury caused, the plaintiff essentially admits that the parties are joint tortfeasors.  We have no such joinder and no such admission here. As such, the "*employer . . .* bear[s] the burden of identifying other responsible parties and demonstrating that some of the costs of the injury should be spread to them."  *Ayers*, 538 U.S. at 165 (emphasis added).  The employer made no such demonstration here.  It merely put forth the amounts of asbestos trust settlements, without tying them to the injuries of the case or making some demonstration that the asbestos manufacturers were joint tortfeasors.

_____

[5]The majority makes much of the Supreme Court's mention in the recitation of facts that the verdict had been reduced for settlements with non-FELA entities.  Yet, it does not appear that any setoff was appealed, much less its propriety addressed by the Supreme Court. Moreover, it is fair to assume that the settlements were with parties to the lawsuit.

[6]Moreover, the cases recognize that "[t]he purpose of the FELA . . . is to facilitate the injured railroad employee's recovery."  *Schadel v. Iowa Interstate R.R., Ltd.*, 381 F.3d 671, 678 (7th Cir. 2004).

14

¶23.    The Missouri Court of Appeals has rejected the notion that a settlement paid by a nonparty may be used as a setoff by the railroad. *Palmer v. Union Pacific R. Co.*, 311 S.W.3d 843 (Mo. Ct. App. 2010).  It noted that allowing a setoff "overlooks the U.S. Supreme Court's rejection of the suggestion that FELA would permit damages to be apportioned among joint tortfeasors according to the degree of fault attributable to each." *Id.* at 856.  It found significant that "Congress, while expressly directing in FELA the apportionment of responsibility between employer and employee based on comparative fault, did not provide for such apportionment among potentially liable tortfeasors." *Id.*  The court noted that recognizing such a credit would exempt the railroad from a portion of *its* liability, which contradicts the express language of the FELA. *Id.*  It also noted that the United States Supreme Court expressly placed the burden on the railroad to seek contribution from other tortfeasors, concluding that "an allowance of setoff for settlement recoveries received on behalf of a nonrailroad tortfeasor is inconsistent with FELA's intent, contradictory to the act's statutory language, and not in accordance with U.S. Supreme Court precedent." *Id.*

¶24.    The United States Supreme Court has explicitly placed the burden on the employer in FELA cases to demonstrate that other parties should bear a portion of the costs.  Illinois Central did not do so in this case.  Its remedy is to seek contribution from other potential tortfeasors, not a setoff against the damages awarded the plaintiff.  Therefore, I would affirm the judgments of the Warren County Circuit Court and the Court of Appeals denying the setoff.

        **KITCHENS, P.J., JOINS THIS OPINION.**

15